J-S69001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: E.R.K., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: M.K., MOTHER : No. 711 EDA 2015

Appeal from the Judgment Entered February 11, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001500-2011;
DP-51-AP-0000304-2013

IN THE INTEREST OF: T.L.K., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: M.K., MOTHER : No. 712 EDA 2015

Appeal from the Judgment Entered February 11, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001501-2011;
DP-51-AP-0000302-2013

IN THE INTEREST OF: H.K., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: M.K., MOTHER : No. 715 EDA 2015

Appeal from the Judgment Entered February 11, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0025103-2010;
DP-51-AP-0000303-2013

IN THE INTEREST OF: B.M.K., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: M.K., MOTHER : No. 716 EDA 2015

J-S69001-15

Appeal from the Judgment Entered February 11, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0025102-2010;
DP-51-AP-0000301-2013

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:              **FILED NOVEMBER 23, 2015**

Appellant, M.K. ("Mother"), appeals from the judgments entered in the Philadelphia Court of Common Pleas, which involuntarily terminated her parental rights to her minor children, E.R.K, T.L.K, H.K., and B.M.K ("Children").[1]  Upon a thorough review of the record, we affirm.

In its opinion, the trial court fully sets forth the relevant facts and

---

[1] The termination hearing for E.R.K., T.L.K., H.K., and B.M.K. ultimately concluded on February 11, 2015, with the trial court involuntarily terminating Mother's parental rights.  On March 9, 2015, Mother filed appeals at docket Nos. 711 EDA 2015, 712 EDA 2015, 715 EDA 2015, and 716 EDA 2015.

Notwithstanding the initial appeal filing date, these consolidated appeals were not listed for disposition due to the delay in transmittal of the certified record to this Court.  The certified record was first due by April 8, 2015.  On April 22, 2015, this Court attempted to contact the trial court, but had to leave a voicemail.  On April 28, 2015, the trial court contacted this Court to inform that they were awaiting notes of testimony yet to be transcribed.  On May 5, 2015, this Court again inquired about the status of the certified record, and the trial court responded that the opinion and certified record would be ready by May 19, 2015.  This Court finally received both the certified record and the opinion on May 19, 2015, causing the briefing schedule to be delayed over one month.  Further, the court granted Mother four extensions of time within which to file a brief and each Appellee/Participant also requested and received an extension.  ***See In re T.S.M.***, 620 Pa. 602, 609 n.7, 71 A.3d 251, 255 n.7 (2013) (reproaching this Court for **unexplained** delays in disposition of cases involving at-risk children, causing them to remain in stasis for substantial, unnecessary time).

- 2 -

procedural history of this case.[2]  Therefore, we have no reason to restate them.

Mother raises the following issues for our review:

> DID DHS MAKE REASONABLE EFFORTS TO ASSIST MOTHER IN BEING REUNITED WITH HER [CHILDREN]?
>
> DID [DHS] SUSTAIN [ITS] BURDEN THAT MOTHER'S RIGHTS SHOULD BE TERMINATED?
>
> DID [DHS] SUSTAIN [ITS] BURDEN REGARDING THE REQUIREMENTS OF 23 PA.C.S.A § 2511(B)?

(Mother's Brief at 5).

The standard and scope of review applicable in a termination of parental rights case is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence.  Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.  Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict.  We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact.  The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

---

[2] The trial court's opinion states that the first termination of parental rights hearing occurred on October 14, 2013, when in fact, it occurred on October 14, 201**4**.

> The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1003-04 (Pa.Super. 2008) (*en banc*).

DHS sought the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*    \*    \*

- 4 -

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8); and (b).

"Parental rights may be involuntarily terminated where any one

subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse,

neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **In Interest of Lilley**, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." **In re Z.P., supra** at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." **In re Adoption of M.E.P.**, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. **In re C.P.**, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the

bond." *Id.* at 520. Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his parental rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every

> problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of…her potential in a permanent, healthy, safe environment." *Id.* at 856.

Importantly, neither Section 2511(a) nor Section 2511(b) requires a court to consider at the termination stage, whether an agency provided a parent with reasonable efforts aimed at reunifying the parent with her children prior to the agency petitioning for termination of parental rights. *In re D.C.D.*, ____ Pa.____, ____, 105 A.3d 662, 672 (2014). An agency's failure to provide reasonable efforts to a parent does not prohibit the court from granting a petition to terminate parental rights under Section 2511. *Id.* at ____, 105 A.3d at 675.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph L. Fernandes, we conclude Mother's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions

- 10 -

presented. (*See* Trial Court Opinion, filed May 15, 2015, at 4-11) (finding:

**(1)** Mother failed to make any progress during forty-three months Children were in placement; DHS provided Mother with Family Service Plan ("FSP") objectives to help Mother achieve goal of reunification, but Mother failed to satisfy majority of those objectives; record establishes that DHS offered reasonable and adequate services to Mother to remedy conditions that brought Children into system, yet Mother continued to exhibit lack of capacity to Parent; in light of Mother's lack of improvement despite assistance from DHS and fact that Children have been in custody of maternal grandmother for past three and one-half years, it is in best interest of Children to terminate Mother's parental rights and change goal to adoption; **(2)** Mother continuously failed to meet majority of her FSP objectives during forty-three months Children were in placement, despite DHS' efforts to make Mother aware of those objectives; at Mother's permanency review hearings, court frequently found Mother minimally or moderately compliant with her FSP objectives; DHS social worker testified she would not recommend Mother for unsupervised visits because Mother was unable to care for all Children at one time and Mother frequently used profanity and engaged in age inappropriate conversations with Children; DHS social worker also stated Mother made little progress with her FSP objectives, as shown by Mother's failure to complete her mental health objective and Mother's inability to apply what she learned in parenting classes to her interactions with

Children; Mother continuously failed to remedy causes that brought Children into system, and Mother is unable to provide stability Children need; Mother's limited success with services provided by DHS demonstrates that Mother cannot overcome her barriers to effective parenting and Children are no closer to reunification with Mother than when Children entered system forty-three months ago; at this point, Children need permanency, which Mother cannot provide; in light of Mother's failure to remedy conditions that brought Children into system and Mother's inability to adequately perform her parental duties, court concluded sufficient evidence existed for termination of Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and (a)(8); **(3)** termination of Mother's parental rights will not cause Children to suffer irreparable harm; Children's foster parent, their maternal grandmother, has parent-child bond with all four Children; DHS social worker testified Children have lived as family with maternal grandmother for last three and one-half years, and Children are doing very well in pre-adoptive home; maternal grandmother is actively involved in Children's school, activities, and medical appointments, while Mother is minimally involved in these events; Mother visits Children for only 2 hours every Saturday and is minimally involved in Children's lives; Mother and Children do not share parent-child bond due to Mother's lack of contact with Children and termination of Mother's parental rights would not destroy existing and necessary relationship between Mother and Children; record

establishes Mother's lack of compliance with FSP objectives, Mother's inability to care for Children, and lack of parent-child bond between Mother and Children, all of which justify termination of Mother's parental rights; thus, court correctly terminated Mother's parental rights under Section 2511(b) and changed goal to adoption, which will best serve emotional needs and welfare of Children). Accordingly, we affirm on the basis of the trial court's opinion.

Judgments affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2015

RECEIVED

2015 MAY 15 AM 11: 01

PROPROTHY

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

In re: In re: In the Interest of B.K., H.K., E.K., T.K.

APPEAL OF: M.K., Mother

: CP-DP-0025102-2010
: CP-DP-0025103-2010
: CP-DP-*OOO1500-2011*
: CP-DP-*00001501-2011*
: CP-51-AP-0000301-2013
: CP-51-AP-0000303-2013
: CP-51-AP-0000304-2013
: CP-51-AP-0000302-2013
: 716 EDA 2015
: 715 EDA 2015
: 711 EDA 2015
: 712 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant, M.K. ("Mother"), appeals from the orders entered on February 11, 2015, granting the petitions filed by the Department of Human Services of Philadelphia County ("DHS") to involuntarily terminate her parental rights to B.K. ("Child #1"), H.K. ("Child #2), E.K. ("Child #3"), and T.K. ("Child #4"), collectively referred to as "children", pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a)(1), (2), (5), (8), and (b). Maureen F. Pie', Esquire, counsel for Mother, filed a timely Notice of Appeal with a Statement of Errors Complained Of.

**Factual and Procedural Background**

This family initially became involved with DHS on September 25, 2009, when DHS received a GPS report alleging that one of children's siblings had a scab on the back of his head, his clothes were very soiled, and he had severe tooth decay. (DHS Exhibit A). This report was substantiated. (DHS Exhibit A). On November 3, 2009, DHS conducted a home assessment on Father's home, where the family was living, and DHS observed that the home was deplorable, there was no operable gas service in the home, there was limited food in the home, there were holes in the floor, the home was infested with rodents and roaches, and there was a strong urine odor throughout the home. (DHS Exhibit A). DHS also observed that the children were dirty

and DHS learned that the children shared one mattress, which was dirty and smelled of urine. (DHS Exhibit A). On November 3, 2009, a safety plan was developed stating that the children would live with K.N., Paternal Grandmother. Shortly thereafter, sometime in November of 2009, there was a verbal altercation between Mother and Paternal Grandmother and the family left Paternal Grandmother's home.

On November 20, 2009, A Family Service Plan ("FSP") meeting was held. (DHS Exhibit A). Mother's objectives were to learn and use non-violent, non-physical discipline methods, to provide children with adequate supervision at all times, to meet children's daily basic needs, learn and understand age appropriate behavior and expectations for children, and to provide adequate and safe living conditions. (DHS Exhibit A). Mother signed the FSP. (N.T. 02/06/15, pg. 18). Subsequently, the family became transient and began living in overcrowded conditions. (DHS Exhibit A). In February 2010, DHS filed an urgent petition for Child #1 and Child #2. On June 23, 2010, Child #1 and Child #2 were adjudicated dependent temporary commitment was discharged and Child #1 and Child #2 were committed to DHS based on present inability of parents. Mother was ordered to begin parenting classes, to take advantage of the supports provided by the shelter where she resided, and participate in IHPS. (DHS Exhibit A). On December 8, 2010, court supervision was terminated by the Honorable Donna Woelpper.

Throughout 2010 and 2011, Child #1 had poor behavior in school and had a significant number of absences from school. (DHS Exhibit A). On July 28, 2011, an Order for Protective Custody ("OPC") was obtained for Child #1, Child #2, and Child #3. On August 8, 2011, Child #1, Child #2, and Child #3 were adjudicated dependent with DHS supervision. Child #4 remained in the custody of Mother, with IHPS monitoring her care. (DHS Exhibit A). DHS was ordered to refer both Parents for parenting capacity evaluations and life skills training. (DHS Exhibit A). Mother subsequently became transient and refused to disclose her whereabouts to DHS and IHPS. (DHS Exhibit A). On September 19, 2011, Child #1 was diagnosed with adjustment disorder and history of physical abuse. (DHS Exhibit A). On October 14, 2011, DHS received a second GPS report alleging that a Philadelphia Electric Company worker went to the family's home to turn off the electric service and found the home to be deplorable and uninhabitable. (DHS Exhibit A). The report stated that a two year old child opened the window shade and the child was filthy. (DHS Exhibit A). The police arrived and transported the children in the home

to DHS. (DHS Exhibit A). The report was substantiated. (DHS Exhibit A). On October 14, 2011, DHS obtained an OPC for Child #4. On October 31, 2011, Child #4 was adjudicated dependent and committed to DHS. Child #3 and Child #1 were also committed to DHS based on present inability of parents. The court ordered for Mother to comply with parenting capacity evaluations, sign releases of information regarding treatment programs, and comply with all FSP objectives. On May 2, 2012, a permanency review hearing was held and Mother was found to be minimally compliant with her FSP objectives, Mother was ordered to comply with all scheduled appointments for her parenting capacity evaluation, and Mother was referred to Behavioral Health Services ("BHS") for consultation. (DHS Exhibit A). On May 3, 2012, and on September 12, 2012, FSP meetings were held. The goal for children was to "return to parent." Mother's objectives remained the same with additional objectives added: to stabilize mental health problems by participating in a psychological evaluation, comply with the evaluation's treatment recommendations, sign releases of information regarding mental health treatment, understand how and why the children were injured, address deficits around mastery of age appropriate developmental tasks by participating in the children's behavioral health services, and maintain regular visits with children. (DHS Exhibit A). Mother attended the FSP meetings and signed the FSP. (DHS Exhibit A). On July 19, 2012, Mother completed an intake appointment with COMHAR but failed to follow up with treatment. (DHS Exhibit A). On November 1, 2012, a permanency hearing was held and Mother was found to be minimally compliant with her FSP goals. DHS was ordered to refer Mother for a parenting capacity evaluation, refer Mother again to the Achieving Reunification Center ("ARC"), and DHS was ordered to evaluate Mother's new residence. (DHS Exhibit A).

On February 1, 2012, a permanency review hearing was held. Mother was ordered to follow through with her parenting capacity evaluation and Mother was ordered to sign releases of information regarding her mental health treatment. (DHS Exhibit A). On May 21, 2013, a Petition for Involuntary Termination of Parental Rights was filed by DHS because Mother failed to comply with her FSP objectives to facilitate reunification with her children. (DHS Exhibit A). The termination hearing was trifurcated and testimony was taken on October 14, 2013, February 6, 2015, and February 11, 2015. Mother's parental rights were terminated on February 11, 2015. (N.T. 02/11/15, pg. 6).

**Discussion:**

On March 11, 2015, Ms. Pie' filed a Notice of Appeal with a Concise Statement of Errors that did not abide by Pa.R.A.P. §1925. The Concise Statement of Errors did not concisely identify each ruling or error that Mother intended to challenge pursuant to Pa.R.A.P. §1925(b)(4)(i) nor did the Supplemental Statement of Errors state the errors complained of without unnecessary detail pursuant to Pa.R.A.P. §2116(a). For the purpose of this appeal, the trial court consolidated the issues Mother's raised in the Concise Statement of Errors to the following:

1. Did the trial court commit an error of law and abuse of discretion by failing to consider Permanent Legal Custody ("PLC") as a reasonable alternative to terminating Mother's parental rights?

2. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating Mother's parental rights under 21 Pa.C.S.A. §2511(a), where the evidence presented at trial was not clear and convincing to terminate Mother's parental rights?

3. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating Mother's parental rights under 23 Pa.C.S.A. §2511(b), where DHS failed to prove by clear and convincing evidence that involuntary terminating Mother's parental rights would best serve emotional needs and welfare of the children?

Mother's first issue on appeal asks whether the trial court committed an error of law and abuse of discretion by failing to consider PLC as a reasonable alternative to terminating Mother's parental rights. A trial court may consider PLC upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if subsidized permanent legal custodianship ("SPLC") were granted. *See In re S.B.*, *208 Pa.Super. 21, 943 A.2d 973, 983–984 (2008)*. Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. *See id.* In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare. *See id.; see also* 42 Pa.C.S.A. § 6351(f.1).

Permanent legal custody is not in the children's best interest because adoption is best suited for the children's safety, protection and physical, mental and moral welfare. Reunification with Mother is not possible because Mother has failed to make any progress in the forty-three months

the children have been in placement, Mother has not completed a majority of her FSP objectives, and Mother lacks capacity to parent. Mother has been unable to put the priority of her children's needs over her own needs. Child #1 is twelve years old, Child #2 is nine years old, Child #3 is five years old, and Child #4 is four years old. It would not be in the children's best interest to be reunified with Mother because the children have been living and being taken care of by Grandmother for the past three and a half years. (N.T. 02/06/15, pgs. 25-26, 35-36). Mother has not been able to show that she can parent these children and she lacks capacity to parent. Adoption is best suited for the children. (N.T. 10/14/14, pgs. 53-54). Grandmother is ready, willing, and able to adopt these children and being adopted by Grandmother is in their best interest.

As to the second issue on appeal, the grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a). The Adoption Act provides the following grounds for involuntary termination:

**(a) General Rule** – The rights of a parent, in regards to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so clear, directly weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999). In Pennsylvania, a parent's basic constitutional right to the custody and rearing of his child is converted upon failure to fulfill his or her parental duties, to the child's rights to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Mother did not achieve a majority of her FSP objectives throughout the forty-three months that children were in placement, even though Mother was made aware of her FSP objectives on numerous occasions because she attended the FSP meetings and was involved in single case planning. (N.T. 02/06/15, pg. 113, 117). FSP meetings were held every six months and objectives were made for Mother, but Mother did not achieve her FSP objectives throughout the life of this case. (N.T. 02/06/15, pg. 13, 20, 117). Since 2011, only at one permanency review hearing was Mother found to be substantially compliant with her FSP objectives. Mother was found to be moderately compliant at two permanency review hearings and at every other permanency review hearing, Mother was found to be minimally compliant. Mother was not compliant with her mental health objective, Mother did not attend the specialized parenting classes she was ordered to go to, and Mother was discharged from the Achieving Reunification Center ("ARC") due to lack of participation. (N.T. 02/06/15, pgs. 13, 20, 106, 117). The DHS social worker testified that throughout her time on this case, Mother was minimally compliant with her FSP objectives because a majority of Mother's goals remained in place. (N.T. 02/06/15, pgs. 22-23). Throughout the life of this case, Mother has not made any progress. Even though Mother completed two parenting classes, she was never able to apply what she learned. The DHS social worker testified that one of the goals of parenting classes was to see a change in how the parent parented her children and Mother showed no change, therefore that goal was not completed. (N.T. 10/14/14, pg. 19). During visits, Mother was not implementing safety related goals, she was unable to intervene without assistance from the social worker, and she did not recognize potential dangerous situations that the children could place themselves in. (N.T. 10/14/14, pgs. 15, 19, 39, 42-43). Mother's visits were always supervised and the DHS social worker who supervised Mother's visits testified that she would not have made a recommendation that Mother's visits be changed to unsupervised visits because Mother is not able to monitor all four children at the same time so they would be unsafe without DHS supervision. (N.T. 10/14/14, pgs. 29, 43). Furthermore, during the visits Mother would talk to the children as if they were her friends, she would have inappropriate conversations about adult issues, and she often used profanity. (N.T. 10/14/14, pgs. 49-50). Mother was referred to BHS and received an evaluation in 2012, but Mother failed to follow up with treatment. (N.T. 02/06/15, pg. 14). All the services were offered to help Mother reunify with her children. Mother claimed that she did not complete her mental health objective because she did not have insurance but the DHS social

worker testified that DHS took Mother to BHS at least two times to connect her with free mental health services but Mother never followed up with treatment. (N.T. 02/06/15, pgs. 14, 31). The record establishes that DHS provided and offered reasonable and adequate services to remedy the conditions that brought children into care. Mother has failed to utilize all the resources provided by DHS to fulfill her affirmative duty to parent children.

On May 21, 2013, DHS filed the petition for termination. Mother has continuously failed to perform her parental duties towards children. Mother's refusal to perform her parental duties has continued for at least six months prior to the filing of the termination petition, as established by the record. As a result, all the elements of the Adoption Act, 23 Pa.C.S.A. §2511(a)(1) have been fully satisfied.

The Adoption Act at 23 Pa.C.S.A. §2511(a)(2) also includes, as grounds for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the children. *Adoption of C.A.W.*, 683 A.2d 91, 914 (Pa. Super. 1996). Courts have further held that the implications of the parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511(a)(2). *In the matter of B.L.W.*, 843 A.2d 380 (Pa. Super. 2004), the court's grave concerns about the Father's ability to provide the level of protection, security and stability that his children needed was sufficient to warrant termination. Id. at 388.

Mother's lack of care and inadequate supervision of her children led to the children's dependency adjudication and to their placement in foster care on August 8, 2011. Mother has continuously failed and refused to remedy the causes that brought children into care. Mother is unable and unwilling to provide the level of protection, security and stability that the children need. Because of Mothers unwillingness to comply with her treatment plan, Mother is unable to protect her children and keep them safe. Mother lacks capacity to parent as Mother has not been able to show that she can parent during her supervised visits. A DHS social worker testified that

there have been ongoing concerns about Mother because Mother cannot manage all of her children during the visits and Mother always required DHS intervention during her visits with children. (N.T. 10/14/14, pgs. 14-15). At one point Child #1 requested that she not participate in the visits because they were upsetting her. (N.T. 10/14/14, pg. 41). Mother continues to be incapacitated and Mother's limited success with services that were provided by DHS prove that the barriers to effective parenting cannot be remedied by Mother. Mother refuses to perform her parental duties and is unable to remediate the causes that brought children into care. After forty-three months of being in placement, children need permanency, which Mother cannot provide. DHS has met its burden under 23 Pa.C.S.A. §2511(a)(2).

DHS also requested termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), whereby children may be removed by court or voluntary agreement and placed with an agency at least six months, conditions which led to the placement of the children continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the children's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that the children's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851A.2d 508 (Pa. Super. 2004).

Children have been in care for a period of forty-three months. Mother continues to be unable to summon the ability to handle her responsibilities of parenting and continuously fails to perform her parental duties and cannot remedy the conditions that led to the children's placement. Hence, Mother's lack of parental skills and minimal compliance with her FSP objectives compel this court to conclude that the children are no closer to be reunified with Mother. The children's life cannot be put on hold any longer in hope that Mother will remedy the conditions that led to

placement within a reasonable amount of time. Mother was aware of her FSP objectives, but was unable to complete them within forty-three months, even though DHS made services available and the court found DHS made reasonable efforts at every hearing. (N.T. 02/06/15, pgs. 13-14). The DHS social worker testified that DHS went with Mother to BHS on at least two occasions to get her free services for her mental health treatment but Mother never followed up. (N.T. 02/06/15, pgs. 14, 31). Throughout the life of this case, Mother was never able to meet a majority of her objectives. For the past forty-three months, Mother was unable to demonstrate that she had the capacity to parent. The needs and welfare of Child dictate that termination and adoption would best serve her permanency needs. DHS met its burden under the Adoption Act, ~~23 Pa.C.S.A. §2511(a)(5).~~

As to 23 Pa.C.S.A. §2511(a)(8), DHS met its burden by clear and convincing evidence that children have been out of Mother's care for twelve months or more, and the conditions leading to the placement still exits, and termination would best serve the needs and welfare of Child. Children have been continuously under DHS' custody for a period of forty-three months. The conditions that led to children's placement still exist. Despite the good faith efforts of DHS to make services available, it is in the best interest of the children to terminate Mother's parental rights. (N.T. 10/14/14, pgs. 53-54).

The trial court will now consider Mother's last issue on appeal, whether the termination of parental rights would best serve the emotional needs and welfare of Child under 23 Pa.C.S.A. §2511(b). The party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child, such as love, comfort, security and stability. *In re Bowman*, 426 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2009). Pursuant to 23 Pa.C.S.A. §2511(b), the trial court must also consider what, if any bond exists between a parent and their child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). Under 23

Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

Children will not suffer any irreparable harm by terminating Mother's parental rights. (N.T. 10/14/14, pg. 56). At every permanency review hearing, the trial court found that DHS made reasonable efforts. Foster parent, the children's Grandmother, has a parent/child bond with all four children. (N.T. 02/06/15, pgs. 25-26, 124). The DHS social worker testified that the children are doing really well in their pre-adoptive home and that they have bonded with their Grandmother. (N.T. 02/06/15, pgs. 25-26, 124). For the last three and a half years, the children have lived with Grandmother as a family and they rely on Grandmother. (N.T. 02/06/15, pgs. 25-26, 35-36). Grandmother is actively involved in the children's school, activities, and medical appointments. (N.T. 02/06/15, pg. 27). Mother is not involved in the children's school, activities, or medical appointments even though Mother was aware of the different events and activities that were going on at the children's school. (N.T. 02/06/15, pg. 32). Mother was invited to participate Child #1's therapy but Mother never availed herself. (N.T. 10/14/14, pgs. 27-28), (N.T. 02/06/15, pg. 37). Mother is not involved in the children's lives. Mother and the children do not have a parent/child bond, the DHS social worker testified that Mother and children have a peer relationship, not a parent/child relationship. (N.T. 10/14/14, pgs. 48, 50). Since children have been in placement, Mother has only seen them for two hours every Saturday. (N.T. 02/06/15, pg. 73). The entire time that the children have been in placement, Mother's contact with them has been very limited. Terminating Mother's parental rights would not destroy an existing necessary relationship between Mother and children.

It is in the best interest of children to be adopted. (N.T. 10/14/14, pgs. 53-54). DHS has attempted to make available reasonable services to Mother but Mother has continuously failed to participate in services and Mother has failed to follow up with treatment recommendations. The trial court has found reasonable efforts at every permanency review hearing. Despite the good faith efforts of DHS to make services available, it is in the best interests of children to terminate Mother's parental rights. (N.T. 10/14/14, pgs. 53-54). The court found that the testimonies of the DHS witnesses were credible. Additionally, the record clearly establishes that Mother's parental rights are being terminated due to her lack of non-compliance with her FSP objectives,

being unable to provide for or care for children, no parent/child bond, and no irreparable harm would occur by terminating Mother's parental rights. Terminating Mother's parental rights is not due to environmental factors. Children have been in placement for forty-three months and they need permanency. Consequently, the trial court did not err in terminating Mother's parental rights and changing the goal to adoption, as it would best serve the emotional needs and welfare of children.

## Conclusion:

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a) and (b). The court also finds that it will not cause irreparable harm to children to sever any bond, and it is in the best interest of children since it would best serve their emotional needs and welfare.

Accordingly, the orders entered on February 11, 2015, terminating the parental rights of Mother, M.K., should be affirmed.

By the court,

Joseph Fernandes, J.

## CERTIFICATE OF SERVICE

I hereby certify that this court is serving a copy of this duly executed Opinion upon all parties or their counsel on <u>May 15, 2015</u>, by regular mail and/or fax. The names and addresses of all persons served are as follows:

Maureen Pie', Esquire
8 Summit St – Ste 200
Philadelphia, Pennsylvania 19118
Attorney for Mother

Janice Sulman, Esquire
100 South Broad Street – Ste 1518
Philadelphia, Pennsylvania 19110
Attorney for Father

Jeri Behrman, Esquire
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102
Attorney for DHS

Mary Cole, Esquire
Defender Association of Philadelphia
1441 Sansom Street
Philadelphia, Pennsylvania 19102
Child Advocate

BY: _____
Ana R. Melhor
Judicial Fellow/Law Clerk
Hon. Joseph L. Fernandes
Judge Court of Common Pleas
First Judicial District of Pennsylvania
Family Division
1501 Arch Street, Room 1431
Philadelphia, Pa. 19102
Telephone: (215)-686-2660